UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

ROY M. [1],                                                         Case No. 3:20-cv-000587-AC

                     Plaintiff,                                OPINION AND ORDER

      v.

COMMISSIONER, SOCIAL SECURITY
ADMINISTRATION,

                     Defendant.

_____

ACOSTA, Magistrate Judge:

      Plaintiff Roy M. ("Plaintiff") filed this action under section 205(g) of the Social Security

Act (the "Act") as amended, 42 U.S.C. § 405(g), to review the final decision of the Commissioner

of Social Security ("Commissioner") who denied him supplemental security income benefits

("SSI" or "Benefits").    The court finds the ALJ provided specific and legitimate reasons for

_____

[1] To preserve privacy, this Opinion uses only the first name and the initial of the last name of the
non-governmental party in this case.

PAGE 1 - OPINION AND ORDER

rejecting the independent medical examiner's walking limitation that are supported by substantial

evidence in the record.  Accordingly, the Commissioner's final decision is affirmed.[2]

*Procedural Background*

On or about February 23, 2017, Plaintiff filed an application for Benefits alleging an onset

date of February 23, 2017.[3]  The application was denied initially, on reconsideration, and by

Administrative Law Judge John Michaelsen (the "ALJ") after a hearing.  The Appeals Council

denied review and the ALJ's decision became the final decision of the Commissioner.

*Factual Background[4]*

Plaintiff is fifty-four years old.  He graduated from high school and received an associate

degree in electrical engineering after attending two years of college.  His past relevant work

experience includes warehouse worker/store laborer.  Plaintiff has not been involved in a

successful work attempt since 2009.  He alleges disability because of panic with anxiety,

degenerative disc disease, post-traumatic stress disorder ("PTSD"), carpel tunnel issues, a head

injury, nerve pain, light sensitivity, and chronic obstructive pulmonary disease ("COPD").

I.  Testimony

In the Adult Function Report dated April 11, 2017 ("Report"), Plaintiff reported he lived

with his domestic partner and daughter, who has "special needs in regards to learning and

---

[2] The parties have consented to jurisdiction by magistrate judge in accordance with 28 U.S.C. § 636(c)(1).

[3] Plaintiff willingly and voluntarily amended his original alleged onset date of January 1, 2010, to February 27, 2017, at the administrative hearing.  The court limits its summary of the record to evidence relevant to this new alleged onset date.

[4] Plaintiff argues only that the ALJ erred in rejecting a medical opinion he was limited to standing and walking two to four hours in an eight-hour day.  Accordingly, the court limits its summary of the record to evidence relevant to this contention.

PAGE 2 - OPINION AND ORDER

understanding," and summarized his average days as follows: "accompany daughter to school bus, appointments, put dog on rope in yard, try to help around house."  (Tr. of Social Security Administrative R., ECF No. 14 ("Admin. R."), at 230-31.)  He indicated he was unable to lift more than ten pounds, had difficulty walking more than a couple blocks due to pain in his feet, occasionally used a cane, and is limited in his ability to squat, bend, stand, reach, walk, sit, kneel, and climb stairs.  (Admin. R. at 231, 235-36.)

Plaintiff and his partner share the cooking duties and housework, but Plaintiff needs to take frequent breaks.  (Admin. R. at 232-33.)   The couple also share the care of Plaintiff's daughter.  (Admin. R. at 231.)  Plaintiff no longer drives due to road rage and he avoids long shopping trips but is able to make quick trips to the store for one or two items, and to attend counseling sessions and other appointments.  (Admin. R. at 233-34.)  He communicates with one friend on Facebook and has personal interactions with immediate family, but stated "[t]he less interaction the better."  (Admin. R. at 234.)

Plaintiff's neighbor, Brittany Lawson ("Lawson"), completed a Third-Party Adult Function Report on April 14, 2017, representing she has known Plaintiff for about two years and spends ten-to-fifteen hours per week with him while their children play.  (Admin. R. at 239.)  She explained Plaintiff has very limited mobility, can barely walk or stand, and when outside spends most of his time sitting in a chair.  (Admin. R. at 239-40.)  Lawson also reported Plaintiff cooks meals twice a week for twenty minutes at a time; helps with laundry, dishes, and vacuuming two to four times a month; makes quick trips to the grocery store twice a month; attends necessary appointments; and is physically limited due to back, foot, and leg pain.  (Admin. R. at 241-42.)

At the December 14, 2018 hearing before the ALJ ("Hearing"), Miller testified he does not drive and that he travelled to the Hearing by bus, light rail, and a slow quarter-mile walk in a trip

that took about an hour and fifteen minutes.  (Admin. R. at 44.)  He explained a pinched nerve in his back makes walking, sitting, and standing extremely painful most of the time and results in occasional numbness in his right leg.  (Admin. R. at 45.)  The neuropathy in his feet also affects his ability to stand.  (Admin. R. at 45.)  He does not take medications for his pain, opting not to participate in an opioid contract due to a prior meth addiction, but does stretching exercises.  (Admin. R. at 49-50, 57.)  He walks his daughter to the bus stop, enjoys cooking a couple nights a week, and takes out the garbage.  (Admin. R. at 52.)

II.  Medical Evidence

   *A.  Treating Physicians*

   In March 2015, Plaintiff reported his pain was at a level four or five, was managed by ibuprofen, and his "main physical limitations" were "COPD, flat feet, and low energy."  (Admin. R. at 589.)  Shortly thereafter, Plaintiff complained of chronic burning foot pain with twitching and sweating, for which he was prescribed gabapentin, continued treatment with a podiatrist, and orthotic inserts.  (Admin. R. at 581-82.)

   The records reveal Plaintiff began seeking treatment for his low-back pain five months later, in August 2015.  (Admin. R. at 549.)  Over the years, he tried courses of acetaminophen, ibuprofen, hydrocodone, gabapentin, pregabalin, flexeril, and lidocaine cream at various doses for pain, some of which he reported to be ineffective.  (Admin. R. at 386, 446, 476-78.)  Plaintiff refused offers of referrals to weight loss programs; weight management treatments, such as MOVE!; and physical therapy.  (Admin. R. at 397.)

   Plaintiff sought care from the emergency room on August 10, 2015, seeking "something stronger than ibuprofen" for excruciating pain in his low back which radiated into his right leg, particularly the thigh area.  (Admin. R .at 549-50.)  He reported it took him five minutes to walk a

PAGE 4 - OPINION AND ORDER

block, stairs were "murder too," and he was unable to stretch, sleep, or sit comfortably for an extended period of time.  (Admin. R. at 563, 1320.)  Rebecca Elizabeth Duby, M.D. ("Dr. Duby"), observed Plaintiff had an antalgic gait favoring his right leg, noted Plaintiff was "an overweight gentleman at risk for compression of his lateral femoral cutaneous nerve," and opined Plaintiff's right leg pain was "classic for meralgia paresthetica" or "muscle strain and spasm."  (Admin. R. at 559, 561.)  Dr. Duby recommended continued use of meloxicam and Tylenol, as well as "flexeril for back spasm, and lidocaine ointment for leg."  (Admin. R. at 559, 561.)  In September 2015, Plaintiff described the pain as "more 'annoying' than painful" that did not prevent him from growing cherry tomatoes, carrots, and lettuce.  (Admin. R. at 541, 545.)

At the end of 2015, Plaintiff reported constant soreness in his low back and right thigh for the past four months, with occasional exacerbation and pain shooting down his right leg, but did not feel a "need to address pain/comfort issues at this visit."  (Admin. R. at 514, 1272.)  Paul Carothers, M.D. ("Dr. Carothers"), noted x-rays "only showed some arthritis in his back," and offered a follow-up MRI.  (Admin. R. at 1269.)  Various medical records authored in early 2016 noted Plaintiff reported he enjoyed taking his companion dog for a walk.  (Admin. R. at 467, 504.)

In early February 2016, Plaintiff sought medication for increased back pain and numbness in his leg pending results of additional testing.  (Admin. R. at 1251.)  Dr. Carothers prescribed a short-term supply of Vicodin.  (Admin. R. at 1252.)  On February 11, 2016, Dr. Carothers noted an MRI of Plaintiff's lumbar spine "only showed mild degenerative changes, none of which are causing any significant nerve compression.  I think your pain could well be managed with conservative measures, like physical therapy and/or chiropractic adjustments."  (Admin. R. at 1218-19.)

PAGE 5 - OPINION AND ORDER

On April 4, 2016, David M. Douglas, M.D. ("Dr. Douglas") noted Plaintiff easily rose from a seated position with his arms folded across his chest, had a normal gait with good arm swing, and was able to heal walk, toe walk, and heal to toe walk.  (Admin. R. at 454.)  The next month, Plaintiff reported a "history of low back pain with radiations down the right leg with associated sensitivity or numbness of the right thigh up front," "ongoing pain in the right hip that worsens with weight bearing and has seen improvement with using a cane," and "some wheezing despite using his inhaler."  (Admin. R. at 444.)

Upon reviewing relatively normal x-rays of Plaintiff's right hip and pelvis taken on May 23, 2016, Rean Goelst, M.D. ("Dr. Goelst") commented:  "This indicates there is no problem with the bones of the hip joint.  Given the kind of pain you have experienced this means the likely cause of your pain is your low back.  Please continue to work on losing weight and increase the gabapentin as we discussed at your last visit."  (Admin. R. at 1177-78.)  Dr. Goelst also referred Plaintiff for a pulmonary function test ("PFT").  (Admin. R. at 446.)  In mid-August 2016, Dr. Goelst recommended "a prednisone burst" and a possible switch to a new pain medication for Plaintiff's "ongoing pain in the right hip that worsens when with weight bearing" but reportedly improves when Plaintiff uses a cane.  (Admin. R. at 1640, 1642.)  When the five-day trial of steroids was unsuccessful, Dr. Goelst directed Plaintiff to gradually decrease his gabapentin before starting the new medication.  (Admin. R. at 1627.)

In September 2016, Plaintiff reported he "weaned off of his gabapentin" and requested "'replacement' medication be sent ASAP due to his '[s]creaming' leg, back and bilateral foot pain."  (Admin. R. at 1617.)  Shortly thereafter, Molly H. Tveite, M.D. ("Dr. Tveite"), initiated an increasing titration of a pregabalin.  (Admin. R. at 1617.)  On November 7, 2016, Plaintiff reported to Dr. Tveite his biggest concern was

PAGE 6 - OPINION AND ORDER

ongoing problems with 3 years of lumbar radiculopathy right-sided with pains radiating down his anterior thigh down to his foot.  He has numbness on the anterior thigh and occasional weakness.  He also has a previous diagnosis of idiopathic peripheral neuropathy.  He reports that the pain is over all stable but tends to wax and wane.  He has a goal to try to manage the pain with non-opioid therapy as he does have a history of former alcohol and methamphetamine abuse.  He has tried various NSAIDs, gabapentin, venlafaxine and most recently switched to pregabalin.  He has found it moderately effective in bringing his pain level down on most days but not all.

(Admin. R. at 355-56.)  Dr. Tveite opined Plaintiff suffered from chronic pain due to lumbar radiculopathy and peripheral neuropathy.  (Admin. R. at 358, 1602.)  Dr. Tveite continued Plaintiff's prescription of pregabalin and suggested a possible trial of acupuncture.  (Admin. R. at 358.)  Plaintiff rejected an offer of physical therapy, explaining he had previously found physical therapy ineffective.  (Admin. R. at 358.)

At this time, Dr. Tveite also commented Plaintiff "does have a history of a clinical diagnosis of COPD, but no formal PFT[5] to confirm the diagnosis.  He does report daily 'smokers cough' and mild wheezing."  (Admin. at at 356.)  On examination, Plaintiff's lungs were "clear to auscultation bilaterally without wheezes, normal work of breathing."  (Admin. R. at 358.)  Dr. Tveite considered evaluating the accuracy of Plaintiff's COPD diagnosis with "PFTs" but noted "patient wishes to defer further work up at this time until he quits smoking."  (Admin. R. at 358.)  Dr. Tveite eventually referred Plaintiff to prosthetics for a nebulizer machine and related supplies.  (Admin. R. at 832.)

Finally, Dr. Tveite sought a podiatric consult for Plaintiff's chronic foot pain.  (Admin. R. at 824, 827.)  In November 2017, the podiatrist, Stephen P. Fekete, D.P.M. (Dr. Fekete"), noted Plaintiff tried two custom orthotics three years earlier with no real improvement, had soreness in

---

[5] "PFT" stands for pulmonary function test.

the arches, and was treating his neuropathy with pregabalin. (Admin. R. at 828.) After reviewing x-rays, Dr. Fekete suggested custom orthotics or alternative medications, which Plaintiff declined. (Admin. R. at 831.) Dr. Fekete then referred Plaintiff to "prosthetics to evaluate him for new shoes." (Admin. R. at 831.)

On December 17, 2018, Dr. Tveite completed a questionnaire provided by Plaintiff's counsel, in which she stated she had been Plaintiff's primary care provider since November 7, 2016. (Admin. R. at 1682-84.) She noted Plaintiff suffered from "lumbar radiculopathy (right), peripheral neuropathy, COPD, mild cognitive impairment, PTSD, headaches, [and] multilevel degenerative disease" which resulted in "low back and right leg pain, burning bilateral feet pain, [and] shortness of breath with exertion." (Admin. R. at 1682.) As a result of his impairments, Dr. Tveite believed Plaintiff could lift no more than ten pounds, stand and/or walk for more than ten minutes or sit for more than thirty minutes at one time, and stand and/or walk for more than one hour or sit for more than thirty minutes in an eight-hour workday; was limited in his ability to push and pull with his lower extremities; and could not climb, balance, stoop, bend, kneel, crouch, crawl, or reach overhead. (Admin. R. at 1683.) She explained Plaintiff required frequent position changes, spends his days primarily "sitting, lying down or reclining," and "experiences constant pain which is likely to be worsened even with sitting or standing for short periods of time." (Admin. R. at 1683-84.) She stated that, in her opinion, Plaintiff had suffered from these impairments and resulting limitations since February 23, 2017. (Admin. R. at 1684.)

B. Consulting Physician

Derek Leinenbach, M.D. ("Dr. Leinenbach") performed a comprehensive musculoskeletal examination of Plaintiff on August 4, 2017. (Admin. R. at 717-720.) Plaintiff reported he experienced chronic lower back pain, significantly worsening over the past two to three years with

PAGE 8 - OPINION AND ORDER

intermittent radiating pain and paresthesias down the lateral aspect of the right thigh.  (Admin. R. at 717.)  Dr. Leinenbach observed Plaintiff was "alert and oriented and in no acute distress," "walk[ed] into the examination room lightly using a cane," "remove[d] and replace[d] shoes without assistance," and got "on and off the examination table without assistance."  (Admin. R. at 718.)  Plaintiff's range motion, and muscle strength, bulk, and tone were all within normal limits.  (Admin. R. at 719.)  His gait was "stable and reciprocating" and "unchanged with or without his case," his tandem gate was "mildly unsteady," and he was able to walk on his heels and toes and squat without assistance.  (Admin. R. at 719.)  Plaintiff exhibited "mild tenderness to palpation along the lower lumbar spine" but there were no palpable spinal deformities or muscle spasms.  (Admin. R. at 719.)

Dr. Leinenbach noted a February 2016 MRI showed "mild degenerative disc disease from L3-S1" and diagnosed him with "lumbago, favor lumbar spondylosis;" "right sciatica;" "bilateral foot paresthesias, favor peripheral neuropathy;" and "COPD."  (Admin. R. at 720.)  He opined that as result of a combination of these impairments, Plaintiff could stand and sit for a total of six hours each day and walk for a total of two to four hours in an eight-hour workday.  (Admin. R. at 720.)  He acknowledged Plaintiff's use of a cane for long distances and uneven terrain was reasonable, but observed the "cane is not required for ambulation."  (Admin. R. at 720.)

C.  *Reviewing Physicians*

Thomas W. Davenport, M.D. (Dr. Davenport"), reviewed Plaintiff's medical records and on April 10, 2017, opined Plaintiff suffered from the severe impairments of discogenic and degenerative disorders of the back, hearing loss, and various mental disorders related to trauma, depression, and anxiety, and the non-severe impairment of COPD.  (Admin. R. at 82.)  He found Plaintiff retained the ability to sit, and stand and/or walk, about six hours in an eight-hour workday;

frequently lift and/or carry ten pounds, kneel, and crouch; occasionally lift and/or carry twenty pounds, climb ramps, stairs, ladders, ropes or scaffolds, balance, stoop, and crawl, but should avoid environments with constant high pitch or loud background noise. (Admin. R. at 85-86.) Dr. Davenport found light residual functional capacity was reasonable and Plaintiff was not disabled. (Admin. R. at 86, 89.) On August 14, 2017, Chandra Basham, M.D. ("Dr. Basham") agreed with Dr. Davenport's description of Plaintiff's impairments, with the addition of the severe impairment of neuropathy. (Admin. R. at 98.) Dr. Basham also concurred in the limitations identified by Dr. Davenport but found Plaintiff's ability to balance was not limited, he could occasionally crouch, he should avoid concentrated exposure to noise, fumes, odors, dusts, gases, poor ventilation, and should avoid all exposure to hazardous machinery and heights. (Admin. R. at 101-03.) Dr. Basham concluded Plaintiff could perform light work, and was not disabled. (Admin. R. at 106-07.)

      *D.  Tests and Imaging*

      X-rays of Plaintiff's lumbosacral spine taken in December 2015 showed mild anterior osteophyte formation at L3-4 and L4-5, which his physician described as: "only . . . some arthritis in his back." (Admin. R. at 516, 691.) A follow up MRI of Plaintiff's lumbar spine in February 2016 revealed mild disc degeneration at L3-4 through L5-S1. (Admin. R. at 481.) An X-ray of Plaintiff's hips dated May 23, 2016, was normal with no significant degenerative changes. (Admin. R. at 438-39, 630.)

      A PFT performed on June 6, 2016, revealed:

      A mild obstructive ventilatory defect. There is no significant reversal of airways obstruction after inhaling combivent. This lack of response to combivent does not exclude reversible airway disease. The normal diffusing capacity argues against the presence of pulmonary emphysema. There is a reproducible increase in post-bronchodilator FEV1 that does not meet ATS criteria form significance but does

suggest asthma in the clinical contest of this patient. A decreased expiratory reserve volume associated with tidal breathing superimposed on the flow-volume curve at low lung volumes is commonly seen in obese patients. Symptoms caused by airway obstruction may be increased in obese patients because they breathe at low lung volumes.

(Admin. R. at 436-37.) October 2017 x-rays of Plaintiff's feet were relatively similar to x-rays taken in 2014 and showed mild degenerative arthrosis of the first metatarsophalangeal, posterior and plantar calcaneal enthesophytosis, and mild swelling of the hindfoot and ankle region of the left foot. (Admin. R. at 829.)

III. Vocational Evidence

Patricia B. Ayerza, M.B.A., C.R.C., A.B.V.E., an impartial vocational expert who appeared by telephone at the Hearing ("Ayerza"), characterized Plaintiff's past relevant work of warehouse work or store laborer as medium, unskilled work. (Admin. R. at 68, 71, 297.) The ALJ asked Ayerza if a hypothetical individual of Plaintiff's age, education, and work experience with the ability to perform light work with occasional balancing, stooping, crouching, crawling, kneeling and climbing who was limited to simple, repetitive, routine tasks with no more than occasional contact with coworkers and the public, limited exposure to dust, fumes, gases, and poor ventilation, and no exposure to unprotected heights, moving machinery, and similar hazards would be able to perform Plaintiff's past work. (Admin. R. at 72.) Ayerza testified such an individual would not be perform Plaintiff's past relevant work as a warehouse worker but could work as a mailroom sorter, routing clerk, and office helper. (Admin. R. at 73-74.) She opined an individual who needed more than usual breaks and lunch hours or would miss fifteen hours a week due to absence, late arrivals, or early departures would not be employable. (Admin. R. at 74-75.) Additionally, Ayerza indicated an individual who was generally hostile and lost control of their anger three times a week would be terminated. (Admin. R. at 76-77.)

PAGE 11 - OPINION AND ORDER

IV.  ALJ Decision

The ALJ found Plaintiff suffered from the severe impairments of "degenerative disc disease; neuropathy; chronic obstructive pulmonary disease; depression; anxiety; [and] post-traumatic stress disorder" and the non-severe impairment of tinnitus and had not engaged in substantial gainful activity since the amended alleged onset date of February 23, 2017.  (Admin. R. at 17.)  While conceding Plaintiff's impairments significantly limited his ability to perform basic work activities, the ALJ found such impairments did not meet or equal the severity of any listed impairment.  (Admin. R. at 17-18.)  As a result of his impairments, the ALJ considered Plaintiff capable of performing light work[6] with occasional balancing, stooping, kneeling, crouching, crawling, and climbing; limited exposure to dust, fumes, gasses, poor ventilation, noxious odors, unprotected heights, moving machinery, and similar hazards; and only simple repetitive, routine tasks with no more than occasional contact with coworkers and the public. (Admin. R at 20.)  The ALJ found Plaintiff incapable of performing his past relevant work of store laborer but found Plaintiff capable of performing the physical and mental demands of mail room sorter, routing clerk, and office helper.  (Admin. R. at 29-30.)  Thus, he found him not disabled from February 23, 2017, through the date of the January 22, 2019 decision.  (Admin. R. at 30-31.)

---

[6] "Light Work" is defined in 20 C.F.R. 416.967(b) as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

The ALJ found Dr. Leinenbach's "opinions concerning the claimant's lifting ability, postural capabilities, and environmental limitations were all well-supported by his accompanying evaluation, as was his opinion concerning the claimant's ability to sit and stand." (Admin. R. at 26.) He then gave partial weight to Dr. Leinenbach's opinion "the claimant could only walk to two to four hours in an eight[-]hour work day," because he found it inconsistent "with his accompanying evaluation that noted some mild tandem instability and mild wheezing, but otherwise no strength, mobility, or flexibility deficits to justify this limitation." (Admin. R. at 26.) The ALJ gave great weight to the opinions offered by the state agency medical consultants, specifically those offered by Dr. Davenport and Dr. Basham that Plaintiff was capable of a light level of exertion with additional postural and environmental limitations. (Admin. R. at 25.) He found these opinions to be the "result of a complete review of the record," "supported by reference to specific aspects of the medical evidence," "consistent with the medical evidence revealing a claimant who was almost totally unremarkable concerning gait, strength, and flexibility in an August 4, 2017 consultative examination," and made by "experts concerning our program of disability evaluation." (Admin. R. at 25-26.) The ALJ gave no weight to the opinions expressed by Dr. Tveite in the December 2018 questionnaire finding them "poorly supported and wholly inconsistent with the evidence of record." (Admin. R. at 28.)

*Standard of Review*

The Act offers SSI to individuals who are age sixty-five or over, blind, or disabled, but who do not have insured status under the Act. 42 U.S.C. § 1382(a). The burden of proof to establish a disability rests upon the claimant. *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992). To meet this burden, the claimant must demonstrate an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can

PAGE 13 - OPINION AND ORDER

be expected to cause death or to last for a continuous period of at least twelve months. 42 U.S.C. § 1382c(a)(3)(A). An individual will be determined to be disabled only if there are physical or mental impairments of such severity that the individual is not only unable to do previous work but cannot, considering his or her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process to use for determining whether a person is eligible for Benefits because he or she is disabled. 20 C.F.R. § 416.920; *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). First, the Commissioner determines whether the claimant is engaged in "substantial gainful activity." If the claimant is engaged in such activity, Benefits are denied. Otherwise, the Commissioner proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments. A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c). If the claimant does not have a severe impairment or combination of impairments, Benefits are denied.

If the impairment is severe, the Commissioner proceeds to the third step to determine whether the impairment is equivalent to one of the specifically listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. § 416.920(d). If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one presumed to be disabling, the Commissioner proceeds to the fourth step to determine whether the impairment prevents the claimant from performing work which the claimant has performed in the past. If the claimant can perform work which he or she has performed in the past, a finding of "not disabled" is made and Benefits are denied. 20 C.F.R. § 416.920(e).

PAGE 14 - OPINION AND ORDER

If the claimant is unable to do work performed in the past, the Commissioner proceeds to the fifth and final step to determine if the claimant can perform other work in the national economy considering his or her age, education, and work experience. The burden shifts to the Commissioner to show what gainful work activities are within the claimant's capabilities. *Drouin*, 966 F.2d at 1257. The claimant is entitled to Benefits only if he or she is not able to perform other work. 20 C.F.R. § 416.920(f).

Judicial review of the Commissioner's decision is guided by the standards set forth in 42 U.S.C. § 405(g). 42 U.S.C. § 1383(c)(3). The reviewing court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson* v. *Comm'r of the Soc. Sec. Admin.,* 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." *Robbins* v. *Soc. Sec. Admin.,* 466 F.3d 880, 882 (9th Cir. 2006). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Tylitzki* v. *Shalala,* 999 F.2d 1411, 1413 (9th Cir. 1993).

The reviewing court may not substitute its judgment for that of the Commissioner. *Robbins,* 466 F.3d at 882; *Edlund v. Massanari,* 253 F.3d 1152, 1156 (9th Cir. 2001). Thus, where the evidence is susceptible to more than one rational interpretation, the ALJ's conclusion must be upheld, even where the evidence can support either affirming or reversing the ALJ's conclusion. *Burch v. Barnhart,* 400 F.3d 676, 679 (9th Cir. 2005). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir. 1995). In determining a claimant's residual functioning capacity, an ALJ must consider all relevant evidence in the record, including, *inter alia,* medical records, lay evidence, and "the effects of symptoms, including pain, that are reasonably attributed

PAGE 15 - OPINION AND ORDER

to a medically determinable impairment." *Robbins,* 466 F.3d at 883, *citing* SSR 96-8p, 1996 WL 374184, at *5; 20 C.F.R. § 416.945(a)(3); *Smolen v. Chater,* 80 F.3d 1273, 1281 (9th Cir.1996). However, the reviewing court must consider the entire record as a whole, weighing both the evidence that supports and that detracts from the Commissioner's conclusion and may not affirm simply by isolating a specific quantum of supporting evidence. *Lingenfelter v. Astrue,* 504 F.3d 1028, 1035 (9th Cir. 2007).

*Discussion*

Plaintiff asserts the ALJ erred by failing to provide the requisite justification for discounting Dr. Leinenbach's opinion Plaintiff is limited to standing two to four hours in an eight-hour workday. As a result, Plaintiff contends the ALJ's finding Plaintiff is capable of light work is unsupported by the record. Plaintiff asks the court to enter an order remanding the matter to the Commissioner for and additional hearing and full consideration of the evidence. The Commissioner contends the ALJ properly considered the evidence in accordance with the terms of the Act and related regulations, and the decision should be affirmed.

The weight attributable to the opinion of a medical source depends, in part, on the professional relationship between the physician and the claimant.[7] Generally, a treating

---

[7] The court notes that for all claims filed on or after March 27, 2017, the regulations set forth in 20 C.F.R. § 416.920c (not § 416.927) govern. The new regulations provide that the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 416.920c. Thus, the new regulations eliminate the term "treating source," as well as what is customarily known as the treating source or treating physician rule. *See* 20 C.F.R. § 416.920c. In this case, Plaintiff filed his claim for Benefits on February 23, 2017, well before March 27, 2017. *See* 20 C.F.R. § 416.325 (defining when an application for benefits is considered filed). Therefore, the court analyzes Plaintiff's claims utilizing § 416.927 (providing the rules for evaluating opinion evidence for claims filed prior to March 27, 2017).

PAGE 16 - OPINION AND ORDER

physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion carries more weight than that of a physician who did not examine the claimant but formed an opinion based on a review of the claimant's medical records. *Holohan v. Massanari*, 246 F.3d 1195, 1201-1202 (9th Cir. 2001).

The ALJ can reject a physician's opinion that is inconsistent with other medical opinions if the ALJ makes findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record. *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). An uncontradicted opinion may be rejected only for clear and convincing reasons. *Id*. at 956-957. Here, the ALJ gave great weight to the opinions of reviewing physicians Dr. Davenport and Dr. Basham that Plaintiff was capable of a light level of exertion with additional postural and environmental limitations. (Admin. R. at 25.) Because these opinions are inconsistent with Dr. Leinenbach's walking limitations, the ALJ must provide specific and legitimate reasons for rejecting Dr. Leinenbach's opinion.

First, the court is not convinced Dr. Leinenbach's opinion Plaintiff is unable to walk more than two-to-four hours in an eight-hour workday eliminates all light work. Light work involves a lifting limitation of twenty pounds with frequent lifting or carrying of tens pounds or less, and a good deal of walking or standing or sitting most of the time with some pushing and pulling of arm or leg controls. 20 C.F.R. 416.967(b). "To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities." *Id*. Dr. Leinenbach opined Plaintiff is able to stand for a total of six hours and walk for a total of two to four hours in an eight-hour workday. When combined, Plaintiff retains the ability to stand or walk for an entire eight-hour workday, making Plaintiff "substantially able" to perform this light-work requirement.

PAGE 17 - OPINION AND ORDER

Second, Plaintiff argues the ALJ improperly substituted his own opinion on Plaintiff's walking abilities for Dr. Leinenbach's opinion he could only walk two-to-four hours in an eight-hour workday.  "The ALJ may not substitute his own layman's opinion for the findings and opinions of a physician."  *Gonzalez Perez v. Sec'y of Health and Human Services*, 812 F.2d 747,749 (9th Cir. 1987).  The ALJ's opinion Plaintiff retained the ability to perform light work is consistent with and supported by two reviewing physicians' opinions that Plaintiff could stand and/or walk about six hours in an eight-hour workday and was "capable of a light level of exertion."  (Admin. R. at 25, 85, 86, 101, 103.)  The ALJ did not rely solely on his opinion but instead adopted the findings and opinions of two physicians that contradicted those of Dr. Leinenbach, on which the ALJ is entitled to rely.

Third, the court finds the ALJ provided the requisite justification for rejecting Dr. Leinenbach's walking limitation.  The ALJ gave "partial weight' to Dr. Leinenbach's opinion Plaintiff "could only walk for two to four hours in an eight[-] hour workday" because it was "not consistent with his accompanying evaluation, which found some mild tandem instability, and mild wheezing, but otherwise no strength, mobility, or flexibility deficits to justify this limitation." (Admin. R. at 26.)

In his report, Dr. Leinenbach opined Plaintiff's ability to walk is limited due to "lumbago, favor lumbar spondylosis," "right sciatica," "bilateral foot paresthesias, favor peripheral neuropathy," and "COPD."  (Admin. R. at 720.)  Contrary to Plaintiff's assertion the ALJ improperly relied on a lack of objective evidence of impairments not referenced by Dr. Leinenbach in rejecting his walking limitation, it is evident from Dr. Leinenbach's report he relied on Plaintiff's back pain, foot pain, and respiratory condition as factors contributing to such limitation. Consequently, the ALJ properly considered Dr. Leinenbach's objective description of Plaintiff's

PAGE 18 - OPINION AND ORDER

mild tandem instability and wheezing, in conjunction with observations of normal range of motion, strength, and flexibility, in his evaluation of Dr. Leinenbach's walking limitation.

"When evaluating conflicting medical opinions, an ALJ need not accept the opinion of a doctor if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). Moreover, where a physician's clinical notes and recorded observations contradict the physician's statement assessing the claimant's ability to stand or walk, an ALJ may reply on such discrepancy to reject the physician's standing and walking limitations. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). Dr. Leinenbach's observations of "a few scattered expiratory wheezes . . . bilaterally," a "mildly unsteady" tandem gain, and normal range of motion, muscle strength, and muscle tone, are all inconsistent with his opinion Plaintiff is limited to walking for only two-to-four hours in an eight-hour workday. Furthermore, Dr. Leinenbach's reports that Plaintiff's "gait is stable and reciprocating and is unchanged with or without his cane," that he can walk on his heels and toes, and that his "cane is not required for ambulation," also are contradictory to the walking limitation.

Plaintiff asserts Dr. Leinenbach considered the 2016 MRI of Plaintiff's lumbar spine, Plaintiff's reports of worsening chronic lower back pain with intermittent radiating pain and paresthesias in the right leg, and positive straight leg raise test results on the right side in the seated and supine positions, all of which support Plaintiff's walking limitation. The court concedes this evidence could be viewed to support for Dr. Leinenbach's opinion Plaintiff is unable to walk more than two-to-four hours in an eight-hour workday. However, the 2016 MRI showed only mild degenerative changes, which does not necessarily support the walking limitation. Moreover, Plaintiff's reports of increased pain are solely subjective and the positive straight leg results do not, in and of themselves, justify the walking limitation. While the evidence could be viewed to

PAGE 19 - OPINION AND ORDER

support Dr. Leinenbach's walking limitation, it also offers adequate support for the ALJ's rejection of the walking limitation. Where evidence exists to support the ALJ's finding, the court may not substitute its own judgment or second guess the ALJ. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) ("The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities. We must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation.")

The ALJ's justification for discounting Dr. Leinenbach's opinion on Plaintiff's inability to walk more than two-to-four hours in an eight-hour workday is valid and supported by the record. The ALJ found Plaintiff generally able to perform light work. This finding is consistent with Plaintiff's daily activities, Dr. Leinenbach's observations, and the reviewing physicians' conclusions. The ALJ did not err in discounting Dr. Leinenbach's walking limitation and in finding Plaintiff capable of light work with some additional restrictions.

## *Conclusion*

The Commissioner's findings on Plaintiff's disabilities, considering the record as a whole, are supported by substantial evidence. The decision of the Commissioner is affirmed.

DATED this 27th day of December, 2021.

JOHN V. ACOSTA
United States Magistrate Judge